EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**UNDER SEAL**

| UNITED STATES OF AMERICA, | : | No. |
|---|---|---|
| Plaintiff, | : | Judge: |
| vs. | : | 18 U.S.C. §§ 371, 666(a)(2) and 2 |
| AARON M. ROSENBERG, | : | |
| Defendant. | : | |

**STATEMENT OF FACTS**

In support of the defendant's plea of guilty to Counts 1 and 2 of the Information, charging Conspiracy, in violation of Title 18, United States Code, Section 371, and Bribery Concerning Programs Receiving Federal Funds, in violation of Title 18, United States Code, Section 666(a)(2) and 2, AARON M. ROSENBERG (hereinafter referred to as the "defendant") admits that the following facts are true and that, if this matter were to proceed to trial, the United States could prove, through competent evidence, the following facts beyond a reasonable doubt:

1. The defendant was the Executive Vice President, Sales of COMPANY A from the 2007/2008 time period to in or about February 2013.

2. COMPANY A was a Delaware corporation with its headquarters located in Phoenix, Arizona. COMPANY A's reported business focus was to enhance public safety

through the use of technologies, such as red-light and speed photo enforcement solutions. Among other things, COMPANY A operated photo enforcement systems in numerous cities in the United States and Canada, including several cities in the State of Ohio.

3. CONSULTANT A was a consultant and lobbyist based in Columbus, Ohio. From in or about 2005 through in or about 2013, ROSENBERG and COMPANY A worked with CONSULTANT A in connection with business that COMPANY A was seeking to obtain or retain with municipalities in Ohio, including Columbus and Cincinnati.

4. Between in or about 2005 and in or about 2013, elected public officials in the City of Columbus and Cincinnati solicited, received, and attempted to receive campaign contributions from COMPANY A by soliciting CONSULTANT A, who then conveyed these solicitations to ROSENBERG and COMPANY A.

5. ROSENBERG and others agreed to provide campaign contributions to these elected public officials in return for the elected public officials agreeing to take, and actually taking, official acts on behalf of COMPANY A to obtain or retain municipal contracts.

6. ROSENBERG and others used CONSULTANT A to funnel conduit or pass-through campaign contributions from COMPANY A to the elected public officials.

7. After CONSULTANT A conveyed the campaign contribution requests to ROSENBERG, CONSULTANT A and ROSENBERG would conceal and disguise the true nature and source of the payments by creating false and fraudulent invoices. ROSENBERG and others coordinated the payments by COMPANY A to CONSULTANT A. The transmission and/or communication of the payments and fraudulent invoices occurred through the use of the U.S. Mail and interstate wire communications.

8. In return for campaign contributions that the elected public officials received and attempted to receive, the elected public officials agreed to perform, attempted to perform, and actually performed official acts that benefitted ROSENBERG and COMPANY A, including but not limited to the following: (a) obtaining a photo red light enforcement contract with the City of Columbus in or about 2005; (b) extending the contract in or about 2009; (c) modifying, extending, and expanding the contract in or about 2010; and (d) attempting to obtain a photo red light enforcement contract with the City of Cincinnati in between 2005 and 2008.

9. On or about September 24, 2007, CONSULTANT A sent an e-mail to ROSENBERG, conveying contribution requests, totaling $30,000, for the campaigns of certain officials in the City of Columbus and the City of Cincinnati. CONSULTANT A explained to ROSENBERG how each elected official was "supportive" and "necessary" in Columbus or "leading the charge in Cincinnati."

10. On or about October 9, 2007, ROSENBERG (copying employees of COMPANY A) sent an e-mail to CONSULTANT A, expressing concern about the $30,000 amount and asking, "What is the minimum you would recommend, that would still get us recognition and keep you (and us) in good graces?"

11. On or about October 9, 2007, during an internal discussion of the $30,000 amount, a COMPANY A executive sent an e-mail to ROSENBERG and another COMPANY A employee stating, in part: "WOW that is a big handout. Is this how our local city handles campaign financing - now I understand the 'order of protection' for our friends".

12. On or about October 12, 2007, CONSULTANT A provided an invoice to COMPANY A for $30,000 for "Consulting Services." COMPANY A paid the invoice on or about the same day.

13. Between on or about October 17, 2007, and on or about November 23, 2007, CONSULTANT A made campaign contributions in CONSULTANT A's own name. CONSULTANT A also paid others who made campaign contributions in their own names.

14. In or around mid-October 2009, CONSULTANT A sent ROSENBERG an invoice (dated October 12, 2009) for $5,000. When CONSULTANT A had not received the payment by October 21, 2009, CONSULTANT A had the following e-mail exchange with ROSENBERG:

CONSULTANT A: Need to know if or when the package has been sent. they are all over me. Less than two weeks out. Please advise

ROSENBERG: I am working on it - It is not easy to ask for these out of cycle. I have been obliged historically, but governance is hammering me. Working on it. . . . Please hang in there.

CONSULTANT A: I need a timeline to tell them. Time is running out for them.

ROSENBERG: What is the absolute deadline? This is more critical.

CONSULTANT A: As I told you earlier they are less than two weeks out. Anything after this will be a major problem at this end

ROSENBERG: I will keep trying. It aint easy, you know I have been back to that well many, many times over the years. . . . I will remain confident.

CONSULTANT A: If you can't get it here this week I will have to take [COMPANY A] off the list and then I will lose control of any timelines

15. On or about October 22, 2009, ROSENBERG forwarded CONSULTANT A's request to a COMPANY A executive for payment.

4

16.     On or about October 22, 2009, COMPANY A paid CONSULTANT A $5,000, with ROSENBERG sending an e-mail to CONSULTANT A stating: "The check is going out in FedEx today. All good?" CONSULTANT A sent an e-mail replying, "I'm here w/[elected public official in Columbus]. [Elected public official in Columbus] says THANKS. Will call later[.]"

17.     On or about October 23, 2009, CONSULTANT A made a $5,000 contribution to the Franklin County Democratic Party.

18.     On or about September 21, 2011, ROSENBERG received an e-mail from the campaign of an official in the City of Columbus, discussing a possible $20,000 contribution. The e-mail, sent from a campaign representative, references a prior conversation the same date between ROSENBERG and the elected public official.

19.     On or about October 6, 2011, CONSULTANT A provided a $20,000 invoice to COMPANY A for a "success fee" concerning an extension of the City of Columbus's photo red light program.

20.     On or about October 14, 2011, COMPANY A provided CONSULTANT A with a $20,000 payment.

21.     On or about October 21, 2011, CONSULTANT A contributed $20,000 to the Ohio Democratic Party.

22. The defendant has read this Statement of Facts and has discussed it with his attorney. The defendant fully understands the contents of this Statement of Facts and agrees without reserve that it accurately describes the events and his acts. The defendant acknowledges that the contents of this Statement of Facts do not constitute all of the facts relevant to the matters discussed herein.

_____  
AARON M. ROSENBERG  
Defendant

2/19/14  
Date

_____  
THOMAS H. BIENERT, JR.  
Counsel for Defendant

2/19/14  
Date